IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL TAIT, JOSHUA SILVER, and | : | CIVIL ACTION |
| ANN BOULAIS, | : | |
| Plaintiffs, | : | |
| vs. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | NO.  08-3083 |
| Defendant. | : | |

DuBOIS, J.                                                    AUGUST 5, 2009

## M E M O R A N D U M

### I.     INTRODUCTION

Section 9-214 of the Philadelphia Code regulates the work of tour guides in the historical section of Center City Philadelphia.  Section 9-214 requires tour guides to acquire certificates before leading tours in that part of the City; to do so, they must pass a written examination. Phila., Pa., Code § 9-214(3)(a), (3)(b)(.3), (4).  The law was set to become effective on October 13, 2008.

On July 2, 2008, plaintiffs filed a First Amendment challenge to the parts of section 9-214 which make it mandatory, requesting declaratory judgment and injunctive relief.  By Orders dated October 6, 2008 and March 3, 2009, the Court, with the agreement of the parties, stayed enforcement of section 9-214 until resolution of the instant litigation.

During the pendency of the litigation, Philadelphia, and indeed the entire United States, has faced significant economic decline and scarcity of resources.  This state of affairs is ongoing. As a result, defendant does not have the financial capability to enforce section 9-214.  At a hearing on April 24, 2009, City Representative Melanie Johnson testified that primarily due to a lack of resources, defendant is not prepared to enforce section 9-214 at this time.  Her office has neither the staff nor the budget to develop or administer the written examination or the licensing

procedure.

In light of Johnson's testimony, the question of whether the instant action is ripe for adjudication is squarely before the Court.  Applying the three-factor test of <u>Step-Saver Data Systems, Inc. v. Wyse Technology</u>, 912 F.2d 643, 647 (3d Cir. 1990), the Court concludes that defendant's present inability to enforce section 9-214 vitiates ripeness.  Accordingly, the Court dismisses plaintiffs' Complaint and the action in its entirety for lack of subject matter jurisdiction.  All pending motions are dismissed as moot.

## II.    BACKGROUND

On April 3, 2008, the City Council of Philadelphia passed Bill No. 080024-A ("the Ordinance"), which amended Chapter 9-200 of the Philadelphia Code, entitled "Commercial Activities on the Streets."  Phila., Pa., Bill No. 080024-A (Apr. 16, 2008), codified at Phila., Pa., Code § 9-214 (2008), <u>available at</u> http://webapps.phila.gov/council/attachments/5141.pdf.  The Mayor signed the Ordinance on April 16, 2008, and it was codified at Philadelphia Code section 9-214.  <u>Id.</u>  The Ordinance "provid[es] for the certification of tour guides in certain areas of the city, establish[es] requirements for such certification, and provid[es] for penalties for violations . . . ."  <u>Id.</u>  It was to become effective 180 days after enactment, on October 13, 2008.  <u>Id.</u>

On July 2, 2008, plaintiffs filed a Complaint in this Court, challenging the mandatory licensing scheme of Philadelphia Code section 9-214 as violating their First and Fourteenth Amendment rights.  In particular, plaintiffs seek a declaratory judgment that "facially and as applied to Plaintiffs, section 9-214 of the Philadelphia Code violates the First and Fourteenth Amendments to the United States Constitution."  (Compl. 9.)  They further seek a preliminary

and permanent injunction prohibiting defendant and its agents from enforcing the provisions of

section 9-214 that make the licensing scheme mandatory and allow for punishment of unlicensed

tour guides—subsections 9-214(3), 9-214(12), and 9-214(13).[1]  (Id.)

---

[1] The challenged provisions read as follows:

Section 9-214(3) Tour Guide Certificate.

(a) No person shall act as a tour guide on any public right-of-way within the Center City Tourist Area unless such person possesses a tour guide certificate issued in accordance with this Section.

(b) In order to secure a tour guide certificate, a person shall:

(.1) Submit a written application to the Department with such information as the Department shall require;

(.2) Be at least sixteen (16) years of age;

(.3) Take and pass a written examination, as required by Section 9-214(4), or provide proof of exemption under Section 9-214(4)(g);

(.4) Pay a non-refundable application fee to the Department in the amount of twenty five (25) dollars; and

(.5) Provide proof of general liability insurance, obtained by the applicant's employer or the applicant, if self employed, in an amount determined by the Office of Risk Management.  Such proof of insurance shall be accompanied with a power of attorney instructing the insurance agency to notify the Department of any default or interruption of coverage for any reason, within ten business days of such default or interruption.

Section 9-214(12) Enforcement.

The provisions of this Section shall be enforced in accordance with the provisions of Section 1-112 [Notices of Violation] of this Code.  In the case where the person, violating the provisions of this Section, is an employee of a tour service company, the tour service company and the employee shall be jointly and severally liable for such violation.

Section 9-214(13) Penalties.

In addition to the penalties set forth in Section 1-109(1) of this Code [a fine not exceeding three hundred (300) dollars for each offense], the Department of Licenses and Inspections may revoke the business privilege license of any person, including any tour service company, for a period of not less than six (6) months nor more than one (1) year, upon his or her third violation of the provisions of this Section within a period not to exceed three years.

On September 15, 2008, plaintiffs filed a Motion for Preliminary and Permanent Injunctive Relief requesting that defendant and its agents be enjoined from enforcing the mandatory provisions of section 9-214.  The central issue raised by plaintiffs' Motion is whether the work of tour guides can be considered a profession and regulated as such or whether such regulation violates plaintiffs' First Amendment rights.  In addition, plaintiffs raise a number of subsidiary challenges to specific provisions of section 9-214.[2]  The Court scheduled a hearing on plaintiffs' Motion for October 6, 2008.

On October 3, 2008, the Court held a telephone conference with the parties, through counsel.  During the telephone conference, counsel for defendant agreed to a stay of the effective date of the Ordinance for the lesser of six months or until resolution of the pending litigation.  Such a stay Order was signed by the Court on October 6, 2008.  In light of the stay, on October 6, 2008, the Court held a chambers conference with the parties, through counsel, rather than a hearing on plaintiffs' Motion.  On March 3, 2009, shortly before the expiration of the stay, parties submitted an agreed-upon Order to the Court extending the stay until resolution of the pending litigation.  The Court signed the stay Order on March 3, 2009, enjoining defendant from enforcing section 9-214 until the Court enters final judgment in the matter.

On April 24, 2009, the Court held a hearing on plaintiffs' Motion for Preliminary and

---

[2] Plaintiffs also challenge section 9-214 as an "unconstitutional prior restraint" as, according to plaintiffs, the exemption provision, subsection 9-214(4)(g), gives defendant substantial discretion to discriminate among speakers.  Plaintiffs further argue that the level of burden imposed by the testing requirement, subsection 9-214(4), is wholly within defendant's discretion.  Section 9-214 is flawed, according to plaintiffs, as it does not set forth any standards by which defendant must exercise such discretion.  Finally, plaintiffs argue that subsection 9-214(4) allows for "potentially enormous delays" as it imposes no deadline for grading the written examination; according to plaintiffs, the lack of a deadline for a final licensing decision renders section 9-214 unconstitutional.

Permanent Injunctive Relief.[3]  At the hearing, plaintiffs Ann Boulais and Michael Tait testified.
Boulais is Administrative Director for American Trolley Tours; Tait is a tour guide who works
with a number of tour companies including, *inter alia*, the Constitutional Walking Tour and
American Trolley Tours.  (Hr'g Tr. 12, 17, Apr. 24, 2009.)  Both plaintiffs testified about the
importance of historical accuracy on tours but contended that the Ordinance nevertheless violates
their free speech rights.  (Id. at 14–18, 30.)  Tait was asked on direct examination "what do you
expect will happen if you're unsuccessful in this lawsuit?"  (Id. at 17.)  In response, Tait stated,
"I believe that a lot of tour guides will have to leave because of the financial difficulties.
However, I don't believe that the quality of tours will improve."  (Id. at 18.)  In response to
further questioning, Tait clarified that section 9-214 imposes financial burdens on tour guides,
including insurance policy premiums, an application fee of $25, and an examination fee.  (Id. at
19–21, 28.)  The Ordinance also requires continuing education, which could pose an additional
financial burden.  (Id. at 21, 24–28.)  According to Tait, enforcing section 9-214 would not
improve the quality of tours because "there is nothing set up to make sure that a tour guide, once
they take the test, is still giving the correct information . . . ."  (Id. at 22–23.)

Defendant called as witnesses Ron Avery, a tour guide and reporter, and Melanie
Johnson, the City Representative.  (Id. at 39–40, 49; Supplemental Joint Stipulations of Fact
Relating to Witness Testimony ("Supp. Joint Stips.") ¶¶ 5–6, Apr. 20, 2009.)  Avery wrote letters
to City Council members and testified before City Council, expressing his opinion that
Philadelphia tour guides are poorly trained and make historical mistakes when giving tours; he
urged City Council to pass a tour guide licensing law.  (Hr'g Tr. 41–44; Supp. Joint Stips. ¶ 8.)

---

[3] In light of the stay Order, plaintiffs' request for a preliminary injunction is moot.

His testimony at the hearing of April 24, 2009 was essentially the same.  (Hr'g Tr. 41–44.)

Johnson testified that as City Representative, she and her office would be in charge of overseeing the implementation of section 9-214 if the Court lifted the stay of enforcement.  (Id. at 50.)  Nevertheless, she stated that her office was not ready to oversee the application and certification process at this time, primarily due to a lack of resources.  (Id. at 50–51.)  She stated that "[i]f the stay is lifted tomorrow, we couldn't do it [enforce section 9-214]."  (Id. at 51.)  Nevertheless, Johnson testified that eventual enforcement of section 9-214 is "absolutely" important to the City of Philadelphia.  (Id.)  On cross examination, she reiterated that she was affirmatively not disavowing any intention of enforcing section 9-214 at some point in time.  (Id. at 54.)

Following the presentation of witnesses, the Court conducted oral argument on the issues raised by the pending motion.  In particular, the Court asked the parties whether, in light of Johnson's testimony, the action was ripe for adjudication.  Counsel presented their positions orally in Court—plaintiffs argued that the dispute is indeed ripe as the existence of section 9-214 has a chilling effect on free speech rights; defendant argued that there is not sufficient adversity between the parties at the present time.[4]

The parties also submitted supplemental memoranda of law on the issue of ripeness.  As

---

[4] An evidentiary issue concerning the transcripts of the City Council hearings about the Ordinance also surfaced at the April 24, 2009 hearing.  The Court ruled that while the transcripts were admissible, the testimony of the witnesses at the City Council hearings would not be admissible for the truth of what was said.  (Hr'g Tr. 5–7, 32–35.)  The Court gave defendant leave to brief the issue after the hearing, and defendant filed a Motion for Clarification or Reconsideration of the Court's April 24, 2009 Evidentiary Ruling with respect to the admissibility of certain limited portions of the City Council hearing transcripts.  In concluding that the action is not ripe for adjudication, the Court did not rely on any of the parts of the City Council transcripts at issue in the Motion for Clarification, and thus, the motion is denied as moot.

an exhibit to its supplemental memorandum, defendant attached an affidavit by Johnson, which

confirms her hearing testimony.  In the affidavit, Johnson avers that "[a]s of [May 6, 2009], the

City is not prepared to administer the application and examination process due to budget

constraints."  (Johnson Aff. ¶ 4, May 6, 2009.)  Johnson further averred that "[t]he City's current

budget deficit is $179.5 million." (Id. ¶ 6.)  Moreover, according to Johnson, the 2009 budget for

the Office of the City Representative was reduced by ten percent to $5,362,513; for fiscal year

2010, it will be further reduced by seventy-nine percent to $1,137,491.  (Id. ¶¶ 9–10.)

In light of Johnson's testimony, oral argument by the parties in open Court on April 24,

2009, the supplemental memoranda of the parties, and Johnson's affidavit, the issue of whether

the instant action is ripe for adjudication is before the Court and must be resolved before any

decision on the merits of plaintiffs' constitutional challenge.

## III.    LEGAL STANDARD—RIPENESS

Article III, section 2 of the United States Constitution "limits federal jurisdiction to actual

'cases' and 'controversies.'"  Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 410 (3d Cir.

1992).  This limitation "stands as a direct prohibition on the issuance of advisory opinions."  Id.

(citation omitted).  "The existence of a case or controversy is a prerequisite to all federal actions,

including those for declaratory or injunctive relief."  Presbytery of N.J. of the Orthodox

Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994) (citations omitted); accord

Armstrong, 961 F.2d at 410.

The doctrine of ripeness, which "determines when a proper party may bring an action,"

has evolved from the case or controversy requirement.  Armstrong, 961 F.2d at 411.  Courts have

noted some disagreement "as to whether the ripeness doctrine is grounded in the case or

controversy requirement or is better characterized as a prudential limitation on federal jurisdiction. . . . But regardless whether the ripeness doctrine has a prudential component, it seems clear that it is at least partially grounded in the case or controversy requirement." Id. at 411 n.12 (internal citations omitted).

The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . ." Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977). The ripeness doctrine also incorporates the principle of constitutional avoidance as delineated in the seminal case of Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring). It allows courts to avoid "ruling on federal constitutional matters in advance of the necessity of deciding them, to postpone judicial review where it would be premature." Armstrong, 961 F.2d at 413 (citations omitted). "Courts are particularly vigilant to ensure that cases are ripe when constitutional questions are at issue." Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1249 (3d Cir. 1996) (citation omitted).

"[I]t is difficult to define the contours of the ripeness doctrine with precision. The task is even more problematic when defining ripeness in the context of declaratory judgment actions . . . ." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 646 (3d Cir. 1990) (internal citations omitted); accord NE Hub Partners v. CNG Transmission Corp. 239 F.3d 333, 341 (3d Cir. 2001) ("Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." (citation omitted)). As the Supreme Court has explained:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged,

under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) (citation omitted).

In Abbott Labs, the Supreme Court developed a two-part test for determining whether a case is ripe for adjudication:  courts must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  387 U.S. at 149. The Third Circuit has further refined that test in the declaratory judgment context:  courts must examine "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."  Step-Saver, 912 F.2d at 647 (citations omitted).  These tests co-exist, and the Third Circuit continues to employ both.  In NE Hub, the Third Circuit explained that "[t]he Step-Saver rubric is a distillation of the factors most relevant to the Abbott Labs considerations.  Adversity and conclusiveness apparently are subsumed under the 'fitness' prong of the Abbott Labs test, while utility is relevant both to 'fitness' and 'hardship.'"  239 F.3d at 342 n.9 (internal citation omitted).

As plaintiffs seek a declaratory judgment that certain provisions of the tour guide law, section 9-214 of the Philadelphia Code, are unconstitutional, this Memorandum will first discuss the ripeness doctrine in the context of declaratory judgments, applying the three-prong Step-Saver test.

A.      Ripeness of Declaratory Judgment Actions

1.      Adversity of Interest

"'For there to be an actual controversy the defendant must be so situated that the parties have adverse legal interests.'"  Step-Saver, 912 F.2d at 648 (quoting 10A C. Wright, A. Miller &

M. Kane, Federal Practice and Procedure § 2757, at 582–83 (2d ed. 1983)).  "Parties' interests are adverse where harm will result if the declaratory judgment is not entered."  Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995).  One circumstance that negates adversity is "where the chance of the defendant acting against plaintiff is but a 'contingency.'"  NE Hub, 239 F.3d at 343 (citations omitted); accord Step-Saver, 912 F.2d at 647–48; Armstrong, 961 F.2d at 411–12.

"Although the action cannot be based on a contingency, the party seeking declaratory relief need not wait until the harm has actually occurred to bring the action.  Thus, in an appropriate circumstance, a litigant can seek a declaratory judgment where the harm is threatened in the future."  Travelers Ins., 72 F.3d at 1154 (internal citations omitted).  Yet the threatened harm cannot be "'imaginary or speculative.'"  Steffel v. Thompson, 415 U.S. 452, 459 (1974) (quoting Younger v. Harris, 401 U.S. 37, 42 (1971)).  When the contemplated harm is the threat of criminal prosecution, the Supreme Court has held that:

> [a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. . . . When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.

Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (internal quotation marks & citations omitted).  Plaintiffs who "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible . . . do not allege a dispute susceptible to resolution by a federal court."  Id. at 298–99 (internal quotation marks & citations omitted).  While Babbitt assessed the credibility of a threat of criminal prosecution, the same analysis has been extended to the prospect of civil enforcement.

See Planned Parenthood of Central N.J. v. Farmer, 220 F.3d 127, 148 (3d Cir. 2000).

The question of when a plaintiff is subject to a credible threat of enforcement has been the subject of much litigation in the Third Circuit.  The Third Circuit "has afforded review even when the state has taken no active measures toward prosecution."  Artway, 81 F.3d at 1247. Nevertheless, "'[m]any cases deny ripeness on the straight-forward ground that the anticipated events and injury are simply too remote and uncertain to justify present adjudication.'"  Id. at 1248 (quoting 13A Charles A. Wright et al., Federal Practice and Procedure § 3532.2, at 138 (1984)).  The Third Circuit has described the key inquiry as follows:  "In order to present a justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  Salvation Army v. Dep't of Cmty. Affairs of N.J., 919 F.2d 183, 192 (3d Cir. 1990) (quoting Steffel, 415 U.S. at 460).  Even when the challenge to the statute "is on First Amendment grounds, there must be a 'real and immediate' threat of enforcement against the plaintiff."  Id. (quoting Hardwick v. Bowers, 760 F.2d 1202, 1206–07 (11th Cir. 1985), reversed on other grounds sub nom, Bowers v. Hardwick, 478 U.S. 186 (1986)).

One key factor in assessing the reality and immediacy of the threat is whether the state has expressly disavowed prosecution under or enforcement of the challenged statute.  See, e.g., Virginia v. Am. Booksellers Ass'n, Inc., 484 U.S. 383, 393 (1988) ("We are not troubled by the pre-enforcement nature of this suit.  The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); Planned Parenthood, 220 F.3d at 148 (relying on the fact that "plaintiffs received no assurances that [the challenged statute] would

not be enforced against them"); Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1299 (3d Cir. 1996)

("We also note that the Government, although it has stated that a federal prosecution is unlikely,

has not expressly disavowed an intent to prosecute." (citation omitted)); Salvation Army, 919

F.2d at 192–93.  For example, in Presbytery, the challenged statute prohibited discrimination

based on sexual orientation.  40 F.3d at 1458.  One of the plaintiffs, a pastor, asserted that when

acting both in his institutional and individual capacities, "he has engaged, does engage, and will

engage in prohibited discrimination."  Id. at 1464.  The state forswore enforcement of the statute

with respect to religious institutions and their employees acting in an institutional capacity.  Id. at

1466–67.  However, the state refused to "eschew enforcement against speech or expressive

conduct outside the setting of a religious institution or office. . . . The pointed nature of that

refusal . . . indicates to us that [plaintiff] and others who engage in the expressive activity he

describes face a real threat of prosecution."  Id. at 1467–68.  The Presbytery court concluded that

the dispute was ripe because plaintiff averred that he would perform acts that violated the statute;

as a result, when acting in his individual capacity, he faced a "threat of prosecution [that was]

'real and substantial' . . . ."  Id. at 1465, 1468 (quoting Salvation Army, 919 F.2d at 192).

The threat of enforcement "must remain 'real and immediate' throughout the course of

the litigation."  Salvation Army, 919 F.2d at 192.  Intervening events may render the controversy

speculative and the dispute unripe.  Id.

### a.     Adversity of Interest in the First Amendment Context

In the context of a First Amendment challenge, the possibility of a "penalty for present

conduct might conceivably 'chill' [plaintiffs] in the current exercise of [their] First Amendment

rights, a prospect that the Supreme Court has always taken very seriously."  Salvation Army, 919

F.2d at 193 (citations omitted).  The <u>Salvation Army</u> court inquired whether this potential

chilling effect "might be considered a present constitutional injury that distinguishes [a First

Amendment challenge] from ordinary declaratory judgment cases."  <u>Id.</u>  It answered this inquiry

in the negative, explaining that "the Supreme Court has held that allegations of chilling injury are

not sufficient basis for standing to challenge a government action, at least when the chill is

'subjective' and not substantiated by evidence that the government action has a present and

concrete effect."  <u>Id.</u> (citations omitted).  In so ruling, the <u>Salvation Army</u> court noted that the

state had granted an exemption to plaintiff from certain provisions of the challenged statute.  <u>Id.</u>

at 192–93.  Moreover, plaintiff in that case had not presented any evidence that the threat of

private enforcement of those provisions "at any time has or will have a perceptible effect on the

exercise of [plaintiff's] First Amendment rights."  <u>Id.</u> at 193.  Accordingly, the court concluded

that the dispute with respect to those provisions was not ripe.  <u>Id.</u>

### 2.  Conclusiveness of Judgment

"Any contest must be based on a 'real and substantial controversy admitting of specific

relief through a decree of a conclusive character, as distinguished from an opinion advising what

the law would be upon a hypothetical state of facts."  <u>Step-Saver</u>, 912 F.2d at 649 (quoting <u>Aetna</u>

<u>Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 241 (1937)).  Whether a judgment may be considered

conclusive often depends on the presence of a concrete set of facts.  Nevertheless, "[t]he

requirement of concreteness has some play in the joints."  <u>Presbytery</u>, 40 F.3d at 1463; <u>accord</u>

<u>Armstrong</u>, 961 F.2d at 412 ("[T]he need for a concrete set of facts is greater in some instances

than others.").  When "the question presented is 'predominantly legal,'" the factual record is not

as important, and the questions may be appropriate for judicial resolution even without a fully

developed factual record.  <u>Armstrong</u>, 961 F.2d at 412 (quoting <u>Pac. Gas & Elec. Co. v. State</u>

<u>Energy Res. Conservation & Dev. Comm'n</u>, 461 U.S. 190, 201 (1983)); <u>accord</u> <u>Abbott Labs</u>, 387

U.S. at 149; <u>NE Hub</u>, 239 F.3d at 344; <u>Pic-A-State</u>, 76 F.3d at 1300; <u>Travelers Ins.</u>, 72 F.3d at

1155.  "Of course, even where the need for a concrete set of facts is not as great, the case or

controversy requirement must be met."  <u>Armstrong</u>, 961 F.2d at 412; <u>accord</u> <u>Presbytery</u>, 40 F.3d

at 1468 ("[P]redominantly legal questions are generally amenable to a conclusive determination

in a preenforcement context; however, plaintiffs raising predominantly legal claims must still

meet the minimum requirements for Article III jurisdiction." (internal quotation marks &

citations omitted)).

### 3.    Utility of Judgment

A declaratory judgment must be "of some practical help to the parties" at the time when it

is made.  <u>Travelers Ins.</u>, 72 F.3d at 1155.  "The idea behind the [Declaratory Judgment] Act was

to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible

decisions about the future."  <u>Step-Saver</u>, 912 F.2d at 649.  In debating the Declaratory Judgment

Act, Congressman Gilbert said "'[u]nder the present [pre-Declaratory Judgment Act] law, you

take a step in the dark and then turn on the light to see if you stepped into a hole.  Under the

declaratory judgment law you turn on the light and then take the step.'"  <u>Id.</u> at 649–50 (quoting

69 Cong. Rec. 2108 (1928)).  To assess utility, the Court must consider "whether the parties'

plans of action are likely to be affected by a declaratory judgment."  <u>Id.</u> at 649 n.9.

### B.    Ripeness of Permanent Injunction Actions

The ripeness of an action for permanent injunctive relief is assessed under the two-part

test of <u>Abbott Labs</u>:  courts must "evaluate both the fitness of the issues for judicial decision and

the hardship to the parties of withholding court consideration."  387 U.S. at 149.  The Third

Circuit has elaborated on this test as follows:

> Under the "fitness for review" inquiry, a court considers whether the issues presented are
> purely legal, as opposed to factual, and the degree to which the challenged action is final.
> The various factors that enter into a court's assessment of fitness include:  whether the
> claim involves uncertain and contingent events that may not occur as anticipated or at all;
> the extent to which a claim is bound up in the facts; and whether the parties to the action
> are sufficiently adverse.
>     The second prong focuses on the hardship that may be entailed in denying judicial
> review, and the determination whether any such hardship is cognizable turns on whether
> the challenged action creates a "direct and immediate" dilemma for the parties, such that
> the lack of pre-enforcement review will put the plaintiffs to costly choices.

Phila. Fed'n of Teachers v. Ridge, 150 F.3d 319, 323 (3d Cir. 1998) (internal citations omitted).

These factors are the same as those considered under Step-Saver, which has been

described as a "refinement" of Abbott Labs that "simply alters the headings under which various

factors are grouped, and since Step-Saver, we have employed both tests."  Id. at 323 n.4 (citations

omitted); accord NE Hub, 239 F.3d at 342 n.9.  The Court will apply the three-part test of Step-

Saver to analyze the ripeness of both the request for declaratory judgment and the request for

injunctive relief because its framework better accommodates the Court's analysis in this case.

## IV.   DISCUSSION

### A.   Declaratory Judgment

#### 1.   Adversity of Interest

Melanie Johnson has testified that defendant is not prepared at this time to begin

enforcing section 9-214.  The question raised by this testimony is whether "the probability of

th[e] feared future event occurring is real and substantial, 'of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment.'"  Salvation Army v. Dep't of Cmty. Affairs of

N.J., 919 F.2d 183, 192 (3d Cir. 1990) (quoting Steffel v. Thompson, 415 U.S. 452, 460 (1974)).

Even when the challenge to the statute "is on First Amendment grounds, there must be a 'real and immediate' threat of enforcement against the plaintiff." Id. (quoting Hardwick v. Bowers, 760 F.2d 1202, 1206–07 (11th Cir. 1985), reversed on other grounds sub nom, Bowers v. Hardwick, 478 U.S. 186 (1986)).  As Johnson has testified and stated in her affidavit that, as of the present date, defendant does not have the resources to enforce section 9-214, arguably there is no "real and immediate threat of enforcement against" plaintiffs or other current or aspiring tour guides.  Id. (internal quotation marks & citations omitted).  Without the financial capacity to develop and administer the testing and certification programs, defendant cannot immediately enforce section 9-214 to plaintiffs' detriment.  Seen in this light, Johnson's statements suggest that the dispute is not ripe for adjudication.

In similar cases, when the Third Circuit has concluded that disputes are unripe, it has done so based on a complete disavowal of enforcement against the plaintiffs.  In Salvation Army, for example, defendant granted plaintiff "[a] substantial number of exemptions . . . to both statutory and regulatory provisions."  919 F.2d at 191.  Following these exemptions, the record in the case "reflect[ed] not only the absence of a threat of enforcement but an express assurance that there will be no enforcement against [plaintiff] of the waived provisions of the statute."  Id. at 192 (citations omitted).  Accordingly, the court held that "unless and until the defendants or their successors attempt to rescind the exemptions that have been granted to [plaintiff], the district court should decline to provide an advisory opinion regarding the constitutionality of these provisions."  Id. at 193.  Without a credible threat of enforcement, there was no need for a declaratory judgment, and the dispute was not ripe.  Id.

In the absence of an equivalent express disavowal, the Third Circuit generally concludes

16

that there is a threat of enforcement and that the dispute is ripe for adjudication.  See, e.g., Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1299 (3d Cir. 1996) ("We also note that the Government, although it has stated that a federal prosecution is unlikely, has not expressly disavowed an intent to prosecute." (citation omitted)); Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1467–68 (3d Cir. 1994) (holding that as the state refused to "eschew enforcement against speech or expressive conduct outside the setting of a religious institution or office," plaintiff "and others who engage in the expressive activity he describes face a real threat of prosecution").

There is no such express disavowal of enforcement in the instant case; in fact, Johnson testified that enforcing section 9-214 at some point is "absolutely" important to the City of Philadelphia.  (Hr'g Tr. 51.)  Defendant's current inability to enforce section 9-214 due to lack of resources, however, serves as an equivalent bar against enforcement, at least at the present time. Ripeness is a doctrine of timing.  See Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995) ("Ripeness determines when a proper party may bring an action." (internal quotation marks & citation omitted)).  While defendant has not disavowed eventual enforcement of section 9-214, defendant has effectively disavowed enforcement at the present time or in the near future. Defendant's financial inability to enforce the challenged law against plaintiffs or any other individual at this time vitiates ripeness.  See Texas v. United States, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks & citations omitted)). While the action is not currently ripe for adjudication, it may ripen at a future time when defendant has the resources to enforce section 9-214 against plaintiffs and others.  If and when

that occurs, plaintiffs may renew their constitutional challenge.

In reaching this conclusion, the Court notes that the Third Circuit has recognized that intervening events may render a controversy speculative and the dispute unripe.  Salvation Army, 919 F.2d at 192.  For a dispute to stay ripe, the threat of enforcement "must remain 'real and immediate' throughout the course of the litigation."  Id.  In the instant case, defendant's budget crisis is such an intervening event.  At the time that plaintiffs filed their Complaint, defendant was prepared to enforce section 9-214, and the dispute was ripe for adjudication.  Since then, however, fewer resources are available to defendant, and defendant is no longer financially capable of enforcing section 9-214.  Under the logic of Salvation Army, this intervening event has vitiated ripeness.

Plaintiffs argue that the case should be adjudicated at this time as "[r]efusing to resolve fully developed First Amendment challenges to laws that the government concededly intends to enforce would inject unnecessary and harmful uncertainty into people's decisions about whether to speak, as they wonder whether the government will begin enforcing its regulations in six months or in twelve."  (Pls.' Supp. Mem. of Law on Ripeness 9.)  In other words, plaintiffs are concerned about the chilling effect that section 9-214 may have on speech even if it is not currently enforced and argue that this chilling effect constitutes a present injury sufficient to make the case ripe.  The Salvation Army court considered this argument and rejected it.  The court explained that "the Supreme Court has held that allegations of chilling injury are not sufficient basis for standing to challenge a government action, at least when the chill is 'subjective' and not substantiated by evidence that the government action has a present and concrete effect."  Salvation Army, 919 F.2d at 193 (citations omitted).

The chill feared by plaintiffs is not substantiated by evidence.  At the hearing, Michael

Tait testified that he believed that if plaintiffs were unsuccessful in their lawsuit, "a lot of tour

guides will have to leave because of the financial difficulties" imposed by section 9-214.  (Hr'g

Tr. 17–18.)  This statement does not demonstrate that the presence of section 9-214 on the books

without an immediate threat of enforcement would have a "present and concrete effect" on

speech.  Instead, Tait suggests that the actual enforcement of section 9-214, with its attendant

financial burdens, would cause tour guides to stop leading tours in Center City Philadelphia.  Tait

did not testify as to what, if any, chilling effect would result if defendant was permitted to

enforce the law but was not financially able to do so.  Without evidence substantiating the claim

that section 9-214 has a current effect on behavior, plaintiffs cannot rely on the alleged chilling

effect to ripen the action for adjudication.

### 2.        Conclusiveness of Judgment

The central question presented by plaintiffs' First Amendment challenge to section 9-

214—whether defendant may regulate the work of tour guides as a professional regulation—is

"predominantly legal."  Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 412 (3d Cir.

1992).  When "the question presented is 'predominantly legal,'" the factual record is not as

important, and the questions may be appropriate for judicial resolution even without a fully

developed factual record.  Id. (quoting Pacific Gas & Elec. Co. v. State Energy Res. Conservation

& Dev. Comm'n, 461 U.S. 190, 201 (1983)).  The Court has held a hearing in which both parties

presented witnesses.  No further factual development—including the specifics of the test or the

exemption from the testing requirement—is required at this time, at least to rule on the central

First Amendment issue presented by the case.  Any judgment issued regarding the

constitutionality of regulating tour guides in this manner would be conclusive.  Accordingly, this factor weighs in favor of ripeness.

### 3.    Utility of Judgment

For a case to be ripe, the declaratory judgment must be "of some practical help to the parties" at the time when it is made.  Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1155 (3d Cir. 1995).  "In this inquiry we consider 'whether the parties' plans of actions are likely to be affected by a declaratory judgment.'"  Presbytery, 40 F.3d at 1469 (quoting Step-Saver, 912 F.2d at 649 n.9).  In Armstrong, the court held that a declaratory judgment would not prove of practical help because it would not affect plaintiffs' or defendants' actions.  961 F.2d at 423.  Moreover, plaintiffs did not "face[] a 'Hobson's choice' of foregoing lawful behavior or subjecting themselves to prosecution under the challenged provision."  Id. at 423–24 (citations omitted).  Lastly, "postponing judicial review [would] not cause plaintiffs to endure substantial economic hardship."  Id. at 424.  To the contrary, in Presbytery, the court held that "entry of a declaratory judgment deciding the free speech issues the [challenged laws] pose in the instant case would be useful to the parties and others who could be affected."  40 F.3d at 1469–70.  The court further held that "[a] declaration of [plaintiff's] rights and those of all others who would seek to engage in similar activity would permit a person to speak without fear of governmental sanction or regulation of their activities protected by the statute."  Id.

This case falls in between Armstrong and Presbytery.  Certainly, plaintiffs would be put at ease by a judgment declaring section 9-214 unconstitutional.  Such a judgment might result in current tour guides continuing to work in Center City Philadelphia or new tour guides beginning to work in the area.  Yet such suppositions are purely speculative as plaintiffs have not presented

any evidence of a present effect on existing or prospective tour guides.  Plaintiffs have not

demonstrated that having section 9-214 on the books without present enforcement would cause

real-world behavioral modification or suppression of speech.

Considering the three Step-Saver prongs as a whole, the Court concludes that the action is

not ripe for adjudication.  While a declaratory judgment may prove appropriate to address

threatened future harm, in the instant case, the threat of enforcement is speculative and remote.

See Steffel, 415 U.S. at 459; Artway v. Attorney Gen. of N.J., 81 F.3d 1235, 1247–48 (3d Cir.

1996).  Given the current financial circumstances and defendant's concomitant lack of resources,

plaintiffs do not face "a real and immediate threat of enforcement . . . ."  Salvation Army, 919

F.2d at 192 (internal quotation marks & citation omitted).  The lack of such a threat repositions

the parties such that their interests are not truly adverse and, thus, vitiates ripeness.  Accordingly,

under Article III, the Court lacks subject matter jurisdiction over the instant action.

**B.      Permanent Injunction**

Plaintiffs seek both a declaratory judgment and a permanent injunction with respect to

section 9-214.  Whether the declaratory judgment action is ripe is governed by the three-prong

test of Step-Saver, 912 F.2d at 647.  Whether the request for injunctive relief is ripe is governed

by the two-prong test of Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other

grounds by Califano v. Sanders, 430 U.S. 99 (1977).  Part IV.A, *supra*, analyzed the ripeness of

plaintiffs' request for a declaratory judgment under Step-Saver.  Assessing the ripeness of the

instant case under Abbott Labs would prove redundant.

At the evidentiary hearing, plaintiffs conceded that "the forms of relief actually overlap

. . . . [A]s a practical matter, . . . assuming the Court decides the case in our favor, whether the

Court issues a permanent injunction or issues a declaratory judgment indicating that the relevant sections of [section 9-214] are invalid on their face, as a practical matter either would constitute complete relief for the plaintiffs." (Hr'g Tr. 9–10.)  Moreover, the <u>Step-Saver</u> test is a refinement of the <u>Abbott Labs</u> test that applies in the context of a declaratory judgment.  <u>NE Hub Partners v. CNG Transmission Corp</u>. 239 F.3d 333, 342 n.9 (3d Cir. 2001); <u>Phila. Fed'n of Teachers v. Ridge</u>, 150 F.3d 319, 323 n.4 (3d Cir. 1998).  Accordingly, the <u>Step-Saver</u> analysis encompasses the two-prong test of <u>Abbott Labs</u>.  The conclusion reached *supra* that plaintiffs' request for a declaratory judgment is not ripe for review mandates a similar ruling with respect to the request for injunctive relief.

## V.    CONCLUSION

For all of the foregoing reasons, the Court concludes that plaintiffs' requests for a declaratory judgment and for injunctive relief are not presently ripe for review.  Plaintiffs' Complaint—and the action in its entirety—are dismissed for lack of subject matter jurisdiction. All pending motions are denied as moot.